UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION AT LEXINGTON**

GOLDEN GATE NATIONAL SENIOR )
CARE, LLC, *et al*. )
                               )            Civil Action No.
      Plaintiffs, )            5:17-CV-153-JMH
                               )
v. )
                               )    **MEMORANDUM OPINION & ORDER**
PAT BROWN and GARY BROWN, )
                               )
      Defendants. )

** ** ** ** **

This matter is before the Court on Plaintiff's Motion for Expedited Consideration of Complaint to Enforce the Alternative Resolution Agreement and to Compel Defendants to Submit Their Claims to Arbitration [DE 4] and Defendants Motion to Dismiss [DE 8], both of which have been fully briefed by the parties.[1] Defendants ask this Court to determine that it lacks jurisdiction in this matter or, in the alternative, abstain from exercising jurisdiction and to dismiss the Plaintiffs' Complaint under the *Colorado River* abstention doctrine in favor of a parallel state court action pending in the Lincoln Circuit Court. They further assert that, in any event, that any injunctive relief would be inappropriate under the Anti-

---

[1] The Court also considers Plaintiff's Motion for Leave to Cite Additional Authority [DE 12] in support of their Motion to Compel Arbitration. This motion is also fully briefed by the parties and will, after careful consideration by the Court, be granted.

Injunction Act. As explained below, the Court disagrees. Rather, Plaintiffs' Motion to Enforce the Alternative Resolution Agreement and to Compel Defendants to Submit Their Claims to Arbitration [DE 4] is well-received, at least in part. For the reasons which follow, relief will be afforded both parties, but Defendants will be enjoined from pursuing a subset of all but Gary Brown's loss of spousal consortium claim before the Lincoln Circuit Court.

## I.

On September 27, 2016, Defendant Pat Brown was admitted to Golden LivingCenter – Stanford ("GLC – Stanford" or the "facility) in Stanford, Kentucky. During the admission process, Pat Brown signed a document titled "ALTERNATIVE DISPUTE RESOLUTION AGREEMENT," which provided for,

> [a]ny and all disputes arising out of or in any way relating to this Agreement or the Resident's stay at the Facility or the Admissions Agreement between the Parties that would constitute a legally cognizable cause of action in a court of law sitting in the state where the Facility is located. Covered Disputes include but are not limited to all claims in law or equity arising from one Party's failure to satisfy a financial obligation to the other Party; a violation of a right claimed to exist under federal, state, or local law or contractual agreement between the Parties; tort; breach of contract; consumer protection; fraud; misrepresentation; negligence; gross negligence; malpractice; and any alleged

departure from any applicable federal, state, or local medical health care, consumer, or safety standards.

It further provides that it "shall be governed by and interpreted under the Federal Arbitration Act, 9 U.S.C. §§ 1 et seq." and that "[a]ll claims based in whole or in part on the same incident, transaction, or related course of care or services provided by the Facility to the Resident shall be addressed in a single ADR process, which shall adjudicate solely the claims of the Parties named in this Agreement...." The Agreement provides that it is binding upon Pat Brown and "all persons whose claim is or may be derived through or on behalf of [her], including any next of kin, guardian, executor, administrator, legal representative or heir" and the facility and "its employees, agents, officers, directors, affiliates and any parent or subsidiary of the Facility and its medical director acting in his or her capacity as medical director." The Agreement is to "inure to the benefit of, bind, and survive" the parties, "their successors, and assigns."

The Agreement also provides that it "GOVERNS IMPORTANT LEGAL RIGHTS" and that one should "PLEASE READ IT CAREFULLY AND IN ITS ENTIRETY BEFORE SIGNING." It further advises that one has a right "to seek advice of legal counsel concerning this Agreement" and that signing it was "not a condition to admission

to or residence in the [f]acility." The Agreement was also, by its terms, revocable "by sending written notice to the Facility within 30 days of signing it."

There is no dispute that Pat Brown signed the agreement or that she never revoked the Agreement. Just under her signature, the Agreement reads, "[b ]y my signature, I acknowledge that I have read this Agreement or had it read to me, that I understand what I am signing, and that I accept its terms." Gary Brown did not sign the Agreement.

On March 9, 2017, Pat and Gary Brown filed an action in Lincoln Circuit Court, Civil Action No. 17-CI-00104, asserting negligence, medical negligence, corporate negligence, violations of long term care resident's rights under KRS 216.510, *et seq.*, and loss of spousal consortium against Plaintiffs as a result of the care that Pat Brown received at the facility. The Browns also brought a claim of negligence against Barbara Woods and Lisa Davis, both of whom are citizens of Kentucky and served as administrators of the facility during Pat Brown's residence, in the state court action. No substantive rulings related to the enforceability of the Agreement have been made in the Lincoln Circuit Court. Neither Woods nor Davis are named as plaintiffs in the matter at bar before this Court.

By virtue of their Complaint in this action, Plaintiffs ask this Court to enforce an arbitration agreement entered into by Pat Brown, and GLC - Stanford, and to stay the pursuit of the action in Lincoln Circuit Court in order that any arbitration ordered may proceed.

## II.

As an initial matter and in the face of Defendant's Motion to Dismiss Plaintiffs' claims pursuant to Fed. R. Civ. P. 12(b)(1) and (7), the Court concludes that it has jurisdiction to consider this matter. Defendants argue that there is no jurisdiction because Plaintiffs have failed to join a necessary party under Rule 19 and, once the citizenship of that necessary party is taken into account, there is a lack of subject-matter jurisdiction under 28 U.S.C. § 1332 because (1) the parties will not be of diverse citizenship and (2) the Federal Arbitration Act will not, alone, create a federal question which would confer jurisdiction under 28 U.S.C. § 1331 in this matter upon this Court.[2] For the same reasons announced in *Preferred Care,*

---

[2] Under the FAA, a district court has jurisdiction over a petition to compel arbitration only if the court would have jurisdiction over "a suit arising out of the controversy between the parties" without the arbitration agreement. 9 U.S.C. § 4. That is, the FAA "'bestow[s] no federal jurisdiction but rather require[s] an independent jurisdictional basis' [for access to a federal forum] over the parties' dispute." *Vaden v. Discover Bank,* 556 U.S. 49, 59, 129 S.Ct. 1262, 173 L.Ed.2d 206 (2009) (quoting *Hall Street Assoc., LLC v. Mattel, Inc.,* 552 U.S. 576, 581-82, 128 S.Ct. 1396, 170 L.Ed.2d 254 (2008) (internal quotation marks omitted)); *see also Moses. H. Cone Mem. Hosp. v. Mercury Const. Corp.,* 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765

*Inc. v. Belcher*, No. 14-CV-107-JMH, 2015 WL 1481537, at *1-3 (E.D. Ky. Mar. 31, 2015), the Court disagrees.

A Rule 12(b)(1) motion can either attack the claim of jurisdiction on its face, in which case all allegations of the plaintiff must be considered as true, or it can attack the factual basis for jurisdiction, in which case the trial court must weigh the evidence and the plaintiff bears the burden of proving that jurisdiction exists. *See RMI Titanium Co. v. Westinghouse Elec. Corp.,* 78 F.3d 1125, 1133-35 (6th Cir.1996); *United States v. Ritchie,* 15 F.3d 592, 598 (6th Cir.1994); *Ohio Nat'l Life Ins. Co. v. United States,* 922 F.2d 320, 325 (6th Cir.1990).

28 U.S.C. § 1332 provides that "district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between ... citizens of different States," and Plaintiffs contend that this Court has jurisdiction based on the diversity of the parties. In the instant action, there is no dispute that the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

---

(1983). Section 4 of the FAA "neither expand[s] nor contract[s] federal subject matter jurisdiction." *Stroh Container Co. v. Delphi Indus., Inc.,* 783 F.2d 743, 747 n .7 (8th Cir.1986). Thus, a petitioner proceeding under § 4 must assert an independent source of subject matter jurisdiction. Here, the plaintiffs assert only that the Court has diversity jurisdiction pursuant to 18 U.S.C. § 1332.

Further, there is no dispute that Defendants are residents of Kentucky and that each of the named Plaintiffs in this action is a citizen of another state. However, Woods and Davis, nursing home administrators named as defendants in the state complaint but not as a party in the present matter, are citizens of Kentucky. Defendants claim that complete diversity of citizenship among the parties in this case cannot be maintained because, while Woods and Davis are not named as plaintiffs in this action, they are indispensable parties under Fed. R. Civ. P. 19 and their joinder would destroy the complete diversity among parties required by 28 U.S.C. 1332(a)(1).

If lack of subject-matter jurisdiction is raised in a motion to dismiss, the plaintiff "bears the burden of proving jurisdiction ... to survive the motion." *Mich. S. R.R. Co. v. Branch & St. Joseph Counties Rail Users Ass'n,* 287 F.3d 568, 573 (6th Cir .2002). However, the plaintiff will "survive [a] motion to dismiss by showing 'any arguable basis in law' for the claims set forth in the complaint." *Id.* (quoting *Musson Theatrical, Inc. v. Fed. Express Corp.,* 89 F.3d 1244, 1248 (6th Cir.1996)).

### III.

Defendants argue that Woods and Davis are necessary and indispensable parties to this action and that, since their

joinder would destroy diversity in this action, subject matter jurisdiction is lacking and the matter must be dismissed.

The existence of a non-diverse party in the related state court action does not, on its own, destroy diversity:

> Rule 19 deals with what were historically known as "necessary" and "indispensable" parties. The terms "necessary" and "indispensable" are terms of art in jurisprudence concerning Rule 19, and "necessary" refers to a party who should be joined if feasible, while "indispensable" refers to a party whose participation is so important to the resolution of the case that, if the joinder of the party is not feasible, the suit must be dismissed. If a necessary party cannot be joined without divesting the court of subject-matter jurisdiction, the Rule provides additional criteria for determining whether that party is indispensable, but if the court finds that the party is anything less than indispensable, the case proceeds without that party, and if, on the other hand, the court finds that the litigation cannot proceed in the party's absence, the court must dismiss the case.

*GGNSC Vanceburg, LLC, v. Hanley,* Civil Action No. 13-106-HRW, 2014 WL 1333204, *3 (E.D.Ky. Mar.28, 2014).

Accordingly, the Court first considers whether Woods and Davis are even necessary parties, which they are if, "in [their] absence, complete relief cannot be accorded among those already parties" or "[their] claims an interest relating to the subject of the action and is so situated that the disposition of the

8

action in [their] absence may ..., as a practical matter, impair or impede [their] ability to protect the interest" or their absence would "leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." Fed. R. Civ. P. 19.

The claims against the defendants in the state court action, which group of defendants includes the various Plaintiffs to this action and Woods and Davis, are based on the same occurrence—the alleged negligence at the nursing home that resulted in injury to Pat Brown and, through loss of spousal consortium, to Gary Brown. The arbitration agreement, by its terms, governs claims against the corporate parties as well as the administrators. Its enforceability with respect to all parties, including Woods and Davis, is a matter pending before the state court. If this Court and the state court were to reach different conclusions concerning the enforceability of the arbitration agreement, the Browns could be placed in a position where they would be obliged to arbitrate the claims with some of the parties covered by the agreement and to proceed in litigation before the state court with respect to other parties, Woods and Davis, who are arguably covered by the agreement. Thus, the Browns are subject to a substantial risk of incurring inconsistent obligations because of Woods and Davis's interests

in this matter. Accordingly, the Court concludes that Woods and Davis are necessary parties to the action.

As the joinder of Woods and Davis, citizens of Kentucky, would destroy diversity jurisdiction, the Court must determine whether they are "indispensable." Thus, the Court must balance the following factors: (1) the extent to which a judgment rendered in their absence might prejudice them or the existing parties; (2) the extent to which any prejudice could be lessened or avoided by protective provisions in the judgment, shaping the relief, or other measures; (3) whether a judgment rendered in his absence would be adequate; and (4) whether Plaintiff would have an adequate remedy if the action were dismissed for non-joinder. Fed. R. Civ. P. 19(b).

The Browns argue that they will not be afforded complete relief in the absence of Woods and Davis as plaintiffs to this action. They assert that there could then be a duplication of proceedings and that they will be unduly and unnecessarily prejudiced if they are subjected to arbitration with just the named Plaintiffs. The Court is not persuaded of their position.

The duplication of proceedings alone in these circumstances is not a disqualifying factor. "[T]he possibility of having to proceed simultaneously in both state and federal court," or in two separate arbitrations for that matter, "is a direct result

of [the Browns'] decision to file a suit naming [Plaintiffs, Woods, and Davis] in state court rather than to demand arbitration under the [arbitration agreement]." *PaineWebber, Inc. v. Cohen,* 276 F.3d 197, 202 (6th Cir. 2001). Moreover, "the possibility of piecemeal litigation is a necessary and inevitable consequence of the FAA's policy that strongly favors arbitration." *Id.* The Court considers that, while there is a risk that the state court will reach an inconsistent outcome regarding the arbitration agreement as it relates to the Browns, it is a low risk. This does not rise to the degree of prejudice required to conclude an absent party is indispensable. *Id.* at 203. Furthermore, "[w]here the risk of prejudice is minimal, the Court need not consider how protective provisions in the judgment, the shaping of relief, or other measures might reduce the risk of prejudice." *Id.* at 205.

Finally, the Browns argue that an adequate remedy exists in state court if this Court dismisses the case. This is true, but the factors, when balanced, do not militate in favor of the conclusion that Woods and Davis are indispensable parties. It follows that the failure to join him does not warrant dismissal. Ultimately, the requirements of diversity of jurisdiction have been met, and this Court has subject matter jurisdiction over this case.

## IV.

Next, the Court considers whether it should abstain from exercising jurisdiction and dismiss Plaintiffs' complaint upon application of the *Colorado River* abstention doctrine which permits this Court to dismiss a cause pending before it in favor of a parallel state court action. The undersigned and several other courts in this district have recently concluded that abstention is inappropriate in circumstances substantially similar to those presented in this matter. *See Diversicare of Nicholasville, LLC, et al. v. Lowry*, No. 5:16-cv-53-JMH, 2016 WL 5852857 (E.D. Ky. Sept. 30, 2016); *Preferred Care, Inc. v. Howell*, 187 F.Supp.3d 796, 805-06 (E.D. Ky. 2016); *Richmond Health Facilities Kenwood, LP v. Nichols,* Civil Action No. 5:14-141-DCR, 2014 WL 4063823 (E.D.Ky. Aug. 13, 2014); *Brookdale Senior Living, Inc. v. Caudill,* Civil Action No. 5:14-098-DCR; 2014 WL 3420783 (E.D. Ky. July 10, 2014); *GGNSC Vanceburg, LLC, v. Hanley,* Civil Action No. 0:13-106-HRW, 2014 WL 1333204 (E.D.Ky. Mar.28, 2014); *GGNSC Vanceburg, LLC, v. Taulbee,* Civil Action No. 5:13-cv-71-KSF, 2013 WL 4041174 (E.D.Ky. Dec.19, 2013); *but see Preferred Care of Delaware, Inc. v. Vanarsdale*, 152 F.Supp.3d 929, 930-32 (E.D. Ky. 2016) (abstaining where state court had issued an interlocutory ruling on the enforceability of the arbitration agreement). In each instance,

there was an allegation of negligence in care provided at a nursing home. The party claiming injury filed a civil action in state court, and the nursing home then asserted that the state court claims were subject to the binding arbitration agreement between the parties and demanded the dispute be referred to arbitration and the state court case dismissed with prejudice. In each instance, the nursing home then filed a complaint in the federal court, alleging federal jurisdiction by way of diversity (and omitting the nursing home administrators, arguably subject to the arbitration agreement but without diverse citizenship, as a party in the federal court action), arguing that the arbitration agreement was valid and enforceable, and asking the federal court to compel the party claiming injury to arbitrate his or her state claims and to enjoin him or her from further pursuing his or her claims in state court.

In *Taulbee*, the late Karl S. Forester of this Court summed up abstention doctrine as follows:

> Even where federal courts properly have jurisdiction over the matter, a district court may abstain from exercising its jurisdiction and refrain from hearing a case in limited circumstances, *Saginaw Hous. Comm'n v. Bannum, Inc.,* 576 F.3d 620, 625 (6th Cir. 2009). This exception is narrow because a district court presented with a case that arises under its original jurisdiction has a "virtually unflagging obligation" to exercise the jurisdiction

> conferred upon it by the coordinate branches
> of government and duly invoked by litigants.
> *Colorado River Water Conservation Dist. v.*
> *United States,* 424 U.S. 800, 817, 96 S.Ct.
> 1236, 47 L.Ed.2d 483 (1976). Abstention is
> an "extraordinary and narrow exception to
> the duty of a district court to adjudicate a
> controversy properly before it." *Id.* at 813.

*Taulbee*, 2013 WL 4041174 at *2. Abstention is appropriate under

certain limited circumstances, as follows:

> Under Colorado River, the threshold issue is
> whether there are parallel proceedings in
> state court. *Crawley v. Hamilton Cnty.*
> *Comm'rs,* 744 F.2d 28, 31 (6th Cir. 1984).
> Once a court has determined there are
> parallel proceedings, the Supreme Court
> identified eight factors that a district
> court must consider when deciding whether to
> abstain from exercising its jurisdiction due
> to the concurrent jurisdiction of state
> court. *PaineWebber, Inc. v. Cohen,* 276 F.3d
> 197, 206 (6th Cir. 2001). Those factors are:
> (1) whether the state court has assumed
> jurisdiction over any res or property; (2)
> whether the federal forum is less convenient
> to the parties; (3) avoidance of piecemeal
> litigation; (4) the order in which
> jurisdiction was obtained; (5) whether the
> source of governing law is state or federal;
> (6) the adequacy of the state court action
> to protect the federal plaintiff's rights;
> (7) the relative progress of state and
> federal proceedings; and (8) the presence or
> absence of concurrent jurisdiction. *Id.*

*Id.*

The analysis is straightforward. No one disputes that the

present action is parallel to the state court proceedings; thus,

the Court applies the eight factor test. *See id.* at *3 (citing *PaineWebber,* 276 F.3d at 206). As the Court sees the matter, only two factors favor abstention. First, it is impossible that the federal forum is less convenient to the parties, since Lexington is not so very far from Lincoln County (in which the injuries allegedly occurred and near which the Court presumes that most of the witnesses reside). *See id.* at *3. Second, the state court action is no doubt adequate to protect the federal plaintiffs' rights because, under the Supremacy Clause, a state court is bound by the requirements of the FAA. *Id.*

The other factors favor federal jurisdiction, however, keeping in mind that "the balance [is to be] heavily weighted in favor of the exercise of jurisdiction." *Moses H. Cone,* 460 U.S. 1, 16 (1983). The parties agree that the case does not involve real property or the assumption of jurisdiction over any res or property. Thus, the first factor weighs in favor of the exercise of federal court jurisdiction and against abstention. *Id.* (citing *Romine v. Compuserve Corp.,* 160 F.3d 337, 341 (6th Cir.1998)). The third factor offers little to no support for Defendant's argument in favor of abstention, since the desire to avoid piecemeal litigation is insufficient to overcome a strong federal policy in favor of arbitration or, in this instance, the exercise of jurisdiction. *PaineWebber,* 276 F.3d at 207.

15

With respect to the order in which jurisdiction was obtained by each court, "priority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions." *Moses H. Cone,* 460 U.S. at 21. Neither of the cases – state or federal – are far advanced in this instance. Since both parties remain in the early pleading stages, the fourth factor weighs against abstention. For much the same reason, the seventh factor-the relative progress of the state and federal proceedings—weighs against abstention as there has been limited progress in the state court to date.

As to the fifth factor, regarding the source of law, while it is true that state law will govern the standard contract defenses Brown raises against the arbitration agreement, the Federal Arbitration Act governs the enforceability of arbitration agreements generally and applies here. The FAA presents a "liberal federal policy favoring arbitration agreements" that must be taken into account even when state-law issues are presented. *Moses H. Cone,* 460 U.S. at 24. It follows that this factor weighs in favor of federal court jurisdiction or, at the very least, not against it in this instance. The final factor under *Colorado River* is the presence or absence of concurrent jurisdiction. While there is concurrent jurisdiction,

this fact only marginally favors abstention, if at all. As noted above, the governing law is the FAA, which "expresses a preference for federal litigation," The existence of concurrent jurisdiction "is insufficient to justify abstention" under the circumstances. *PaineWebber,* 276 F.3d at 208-09.

On balance, the circumstances in this matter do not present the "exceptional" circumstances necessary to compel this Court to abandon the "virtually unflagging obligation of the federal courts to exercise the jurisdiction given them." *Colorado River,* 424 U.S. at 817-1". Accordingly, this Court declines to abstain.

**IV.**

Finally, the Court considers whether Plaintiff's complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted because the underlying ADR Agreement is invalid and unenforceable. Specifically, Defendants argue (1) that the ADR Agreement does not evidence a contract involving interstate commerce, (2) that the ADR Agreement is facially unenforceable because it is unconscionable, and (3) that the ADR Agreement is unenforceable because the attorney-in-fact did not possess the authority to execute it.

(1)

Even assuming that the Browns correctly contend that the care provided to Pat Brown occurred only within the borders of the Commonwealth of Kentucky, this is a case which clearly falls within the scope of the FAA. The FAA applies to "contract[s] evidencing a transaction involving commerce," 9 U.S.C. § 2, and extends to transactions "in individual cases without showing any specific effect upon interstate commerce if in the aggregate the economic activity would represent a general practice ... subject to federal control." *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56–57, 123 S.Ct. 2037, 156 L.Ed.2d 46 (2003) (quoted in *Nichols*, 2014 WL 4063823 at *8; *Brookdale Sr. Living Inc. v. Stacy*, 27 F.Supp.3d 776, 791–92 (E.D.Ky. 2014)). "The Supreme Court has "interpreted the term 'involving commerce' in the FAA as the functional equivalent of the more familiar term 'affecting commerce'—words of art that ordinarily signal the broadest permissible exercise of Congress' Commerce Clause power." *Id.* (citing *Allied-Bruce Terminix Cos.*, 513 U.S. 265, 273–274, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995)).

Interstate commerce is interpreted broadly and healthcare is an economic activity that represents a general practice subject to federal control. *See Ping v. Beverly Enterprises, Inc.*, 376 S.W.3d 581, 589 (Ky. 2012) (citing *Alafabco*, 539 U.S. at 56–57). Courts in the Eastern District of Kentucky, as well

18

as others, have found that similar nursing home residency agreements are contracts "evidencing a transaction involving commerce," under the FAA. *See Nichols*, 2014 WL 4063823 at *8; *Caudill*, 2014 WL 3420783, at *9; *see also Stacy*, 27 F.Supp.3d at 791-92; *Hanley*, 2014 WL 1333204 at *8-9; *GGNSC Taulbee*, 2013 WL 4041174 at *10-11 (remarking that courts have looked to the acceptance of Medicare as evidence of interstate commerce); and *Warner*, 2013 WL 6796421 at *7-8.

The arbitration agreement in this case is a component of a larger contract that evidences a transaction involving interstate commerce. *See Stacy,* 27 F.Supp.3d at 791-92. As other courts have pointed out, "[t]he food, medicine, and durable medical supplies that [the plaintiffs] provided must come from somewhere." *Id.* at *14 (quoting *GGNSC Louisville Hillcreek, LLC v. Warner,* Civil Action No. 3:13-cv-752-H, 2013 WL 6796421, *8 (W.D.Ky. Dec. 19, 2013)). Accordingly, Defendants argument that the arbitration agreement is unenforceable under the FAA because it does not evidence a transaction involving interstate commerce is without merit.

(2)

Defendants argue next that the procedural and substantive nature of the ADR Agreement renders it unconscionable. Unconscionability, in the Commonwealth of Kentucky, is a

doctrine that exists as a narrow exception to the rule that, absent fraud in the inducement, a written agreement duly executed by the party to be held, who had an opportunity to read it, will be enforced according to its terms. *Conseco Finance Servicing Corp. v. Wilder*, 47 S.W.3d 335, 341 (Ky. Ct. App. 2001). It is "directed against one-sided, oppressive, and unfairly surprising contracts, and not against the consequences per se of uneven bargaining power or even a simple old-fashioned bad bargain." *Id*. (citing *Louisville Bear Safety Serv., Inc. v. South Central Bell Tel. Co.*, 571 S.W.2d 438, 440 (Ky. Ct. App. 1978)).

Defendants argue that "[t]he ADR Agreement is part of a mass-produced, boiler-plate, pre-printed document, likely presented to the Respondents within a lengthy stack of admissions paperwork" when "the Petitioners are aware that the admissions process is often an overwhelming experience. Yet, the Petitioners knowingly present to residents a stack of admissions paperwork consisting of legal documents, which are lengthy and cumbersome, to sign typically at one sitting." *See* [DE 8-1.] They point, as well to what they describe as "an obviously gross disparity of bargaining power between the parties in situations like the instant case. The Petitioners, as a healthcare services conglomerate, draft and select the desired placement and

presentation of the ADR Agreement to residents and their families when they are facing the emotional and difficult task of seeking necessary care for a loved-one from an unknown third party." At the heart of their argument is this: "These arbitration agreements are not entered into by two commercially sophisticated parties seeking mutual benefits in order to promote commercial efficiency. Instead, these agreements are utilized to protect the healthcare conglomerate and undermine the justice system in a whole arena of personal injury law." They point out, as well, the relatively larger expense imposed on plaintiffs in suits like theirs with cost-sharing imposed by the process, as well as the tendency to truncate discovery.

The agreement in question contains the following features: (1) it is on separate sheets of paper, separately titled in bold print, and presented as a component of the admissions package during the admissions process; (2) it is conspicuously titled; (3) the title states that acceptance of the agreement is not required for admission to the facility; (4) the agreement provides no limitation on the right to recovery, including type or amount of damage claims, causes of action, or truncation of the otherwise applicable statute of limitations; and (5) the terms are reciprocal and mutual by and between the parties.

In other words, there is nothing to suggest that the agreement is "one-sided, oppressive and unfairly surprising" or that the dichotomy between the parties, a health care company and an individual seeking nursing home care, accompanied by her family in seeking that care, resulted in some sort of bargain that should not be enforced. *Conseco,* 47 S.W.3d at 341. For this reason, other courts applying Kentucky law have found that arbitration agreements similar to the one at bar and presented as part of the nursing home admission process were not procedurally unconscionable. *See, e.g., Nichols,* 2014 WL 4063823 at *9; *Abell v. Bardstown Medical Investors, Ltd.,* 2011 WL 2471210, *1-3 (W.D.Ky. June 20, 2011).

Moreover, the arbitration agreement is not, without something more, void against public policy. It is well established that there exists "an emphatic federal policy in favor of arbitral dispute resolution." *KPMG LLP v. Cocchi,* 565 U.S. 18, 21 (2011). The United States Supreme Court specifically rejected an argument that arbitration agreements can be voided for public policy reasons. *Marmet Health Care Center, Inc. v. Brown,* 565 U.S. 530, 532-33 (2012). The Supreme Court held that, "'[w]hen state law prohibits outright the arbitration of a particular type of claim, the analysis is straightforward: The

conflicting rule is displaced by the FAA.'" *Id.* (quoting *AT & T Mobility LLC v. Concepcion,* 563 U.S. 333, 341 (2011)).

Accordingly, the Court declines to provide relief to Defendants on these grounds.

## VI.

The state court complaint alleges a loss of spousal consortium clam on behalf of Gary Brown, among other claims, and Plaintiffs argue that it is governed by the Agreement and must be arbitrated. The Court disagrees. The Agreement expressly governs "all claims based in whole or in part on the same incident, transaction, or related course of care or services provided by the Facility to the Resident" and is binding upon Pat Brown and "all persons whose claim is or may be derived through or on behalf of [her]...." For this set of claims "shall inure to the benefit of, bind and survive them, their successors, and assigns."

Under Kentucky law, "[a] loss of consortium claim is also a statutorily created independent claim that accrues to the spouse. Therefore, just as a decedent cannot bind his heirs to arbitrate a wrongful death claim, the decedent also cannot bind his heirs to arbitrate a loss of consortium claim." *Life Care Centers v. Neblett*, No. 5:14-CV-00124-TBR, 2014 WL 7179652 (W.D.Ky. December 17, 2014) (internal citations omitted). Gary

23

Brown did not sign the agreement and, in the absence of any indication that Pat Brown was acting as his power of attorney when she signed the admissions agreements, including the arbitration, the Court declines to extend the limitations of the arbitration agreement to Gary Brown's loss of consortium claim, which belongs to him alone. *See, e.g., Richmond Health Facilities v. Nichols*, 811 F.3d 192, 197 (6th Cir. 2016) (declining to require decedents to arbitrate wrongful death claim); *Preferred Care, Inc. v. Howell*, No. CV 16-13-ART, 2016 WL 2858523, at *5 (E.D. Ky. May 13, 2016) (citing *Extendicare Homes, Inc. v. Whisman*, 478 S.W.3d 306, 313–14 (Ky. 2016) (same); *Ping v. Beverly Enters., Inc.*, 376 S.W.3d 581, 597–99 (Ky. 2012) (same) (holding that because a wrongful death claim "is not derived through or on behalf of the resident, but accrues separately to the wrongful death beneficiaries and is meant to compensate them for their own pecuniary loss," wrongful death beneficiaries were not parties to the arbitration agreement). Further, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (internal quotation marks omitted). Accordingly, Plaintiffs' effort to force Gary Brown to arbitrate his loss of consortium claim is misplaced and the

24

Court will not compel Defendant Gary Brown to arbitrate it or stay the prosecution of that claim in the Lincoln Circuit Court.

## VII.

Finally, the Court considers whether an injunction would violate the Anti-Injunction Act. While the FAA requires a federal court to stay their own proceedings, it does not specifically authorize federal courts to stay pending state court cases. *Great Earth Co., Inc. v. Simons*, 288 F.3d 878, 893 (6th Cir. 2002). Rather, the federal court's authority to enjoin state-court proceedings is subject to the legal and equitable standards for injunctions generally, including the Anti-Injunction Act, 28 U.S.C. § 2283. The Sixth Circuit has concluded that a district court's injunction of state-court proceedings after compelling arbitration does not violate the Anti-Injunction Act because the injunction fell "within the exception for injunctions 'necessary ... to protect or effectuate [district court] judgments.'" *Great Earth*, 288 F.3d at 894. It concluded that "[a]n injunction of the state proceedings [was] necessary to protect the final judgment of the district court on this issue." *Id*. Since enjoining the state proceeding is not generally barred by the Anti-Injunction Act and such injunction would serve to protect or effectuate this Court's judgments, the Browns will be enjoined from pursuing the

pending state court claims (except for Brown's loss of consortium claim, as explained above) before the Lincoln Circuit Court.

Accordingly, **IT IS ORDERED** that:

(1) That Defendant's Motion to Dismiss [DE 8] is **GRANTED IN PART** and **DENIED IN PART**;

(2) That Plaintiffs' Motion for Expedited Consideration of Complaint to Enforce the Alternative Resolution Agreement and to Compel Defendants to Submit Their Claims to Arbitration [DE 4] is **GRANTED IN PART** and **DENIED IN PART**;

(3) That Plaintiffs' Motion for Leave to Cite Additional Authority [DE 12] is **GRANTED**;

(4) That Defendants are **ENJOINED** from pursuing their pending state court claims for violations of the rights of long term care residents under KRS § 216.515 and personal injury by means of negligence, medical negligence, and corporate negligence before the Lincoln Circuit Court. Defendant Gary Brown's claim for loss of spousal consortium before the Lincoln Circuit Court is not enjoined.

This the 5th day of April, 2018.

 Signed By:

*__Joseph M. Hood__*

Senior U.S. District Judge